IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Criminal Action No. 7:16-cr-10 |
| v. | ) |
| | ) |
| SHAWN TYRONE YOUNG, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

On June 5, 2019, defendant Shawn Tyrone Young, proceeding pro se, filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. ECF No. 220. The government filed a motion to dismiss Young's petition on September 11, 2019, ECF No. 224, to which Young did not respond. For the reasons stated below, the court will **GRANT** the government's motion and **DISMISS** Young's petition.

### I. BACKGROUND

On February 18, 2016, Young was indicted on two counts of distributing heroin and two firearm counts. ECF No. 19. On June 6, 2016, Young entered into a Rule 11(c)(1)(C) plea agreement in which he agreed to plead guilty to conspiracy to distribute 1,000 grams or more of a mixture containing heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count 1) and one count of possessing a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) (Count 11). Plea Agrm't, ECF No. 109 at 1-2. He pled guilty the same day. ECF Nos. 107, 108. On September 16, 2016, Young was sentenced to 151 months on Count 1 and 24 months on Count 11, to run concurrently. The remaining counts were dismissed. ECF No. 150.

Young's § 2255 motion is based on the participation of Officer Craig Frye in the investigation and prosecution of his case. In April 2018, nineteen months after Young was convicted and sentenced, the government filed a motion seeking disclosure of grand jury materials and potential impeachment materials regarding Officer Frye. The court granted the motion on May 16, 2018. ECF No. 213. Young's motion recounts much of the information disclosed about Frye, as does the government's motion to dismiss.

The complaints about Officer Frye included concerns over not following proper procedures and protocols for handling informants and drug information, making disrespectful and offensive comments about women and minority groups, making false statements in court proceedings, and not reporting expunged arrest and charge information. Based on this claimed misconduct, a Roanoke County Assistant Commonwealth's Attorney decided not to sponsor Frye's testimony in any further cases unless the testimony was corroborated by other evidence. Also, the United States Attorney determined that Frye would no longer be permitted to testify as a government witness. None of the undisclosed claimed misconduct was related to Young's case.

Given the above revelations about Frye, Young argues that he should be allowed to withdraw his guilty plea on the charges brought against him. He claims that Frye played a critical role in securing the charges and asserts that he would not have pled guilty had he known about the information bearing on Frye's credibility. However, a review of the record indicates that while Frye was involved in the search of Young's home, there were several officers present and Frye's report of the search was supported by another report filed at the

time. The fact that Frye was involved in the search, without more, is insufficient to warrant relief under § 2255.

On November 4, 2015, several officers, none of whom were Frye, conducted surveillance on an apartment and vehicle traffic that resulted in the arrest of Michael Patterson and Randy Niday for drug-related offenses. Incident Reports, ECF No. 224-1 at 1-10. A report from the Virginia State Police dated November 3, 2015, which does not list Frye as being present or involved in the investigation, states that Patterson said he had known his heroin source for approximately two months. The source was known to Patterson as "Ghost" and Ghost had a "right-hand-man" known as "Black." Ghost lived with his girlfriend, Chasity Bailey, in an apartment in Vinton, Virginia. Patterson described his relationship with Ghost as Patterson buying heroin from Ghost and reselling it in Roanoke. The report was signed by Special Agent J.A. Crowder. ECF No. 224-1 at 11-12.

On December 18, 2015, a controlled buy of heroin was made from Chasity Bailey's apartment in Vinton, Virginia. The buy was overseen by a detective with the Roanoke County police department with assistance from two other detectives. Frye's name was not mentioned in the report. ECF No. 224-1 at 13-16.

On January 11, 2016, a second controlled buy of heroin was made from Bailey in a parking garage in Roanoke, Virginia. The buy was overseen by the same detective who conducted the first buy and there is no mention of Frye in the report. A note was added to the report that on January 13, 2016, the confidential informant (CI) contacted the detective and told her that the CI was now able to communicate and purchase heroin from a male

3

subject, believed to be Bailey's boyfriend, and believed to be named Christian Davis. Bailey was believed to be distributing heroin and other narcotics for Davis. ECF No. 224-1 at 17-21.

On January 14, 2016, a third controlled buy of heroin from Bailey was conducted by detectives of the Roanoke Regional Drug Unit in Vinton. Bailey's boyfriend, known only to the CI as "Boo" and tentatively identified as Christian Davis, was present for part of the transaction. Bailey had summoned Boo from the bedroom to "hear that his dope was good because someone else had said it wasn't." Frye was not mentioned in the report of the buy. ECF No. 224-1 at 22-26.

A report dated January 27, 2016 summarizes a controlled purchase and interview of a CI by the Rockbridge Regional Drug Task Force, which was described as a "buy/bust." The name of the subject of the buy/bust is redacted, so it is unclear if the buy/bust was related to Young's drug activities. Frye prepared the report, but his role in the buy/bust is not described in the report. ECF No. 224-1 at 31-33.

On January 27, 2016, Special Agent Joe Crowder of the Virginia State Police swore out a search warrant for Bailey's apartment. Crowder stated that he had interviewed a CI who told him that the CI had been the apartment in the last 72 hours and had dealt with a black male known to the CI as "Ghost." The black male produced several bags containing a white powdery substance consistent with cocaine and was observed to be handling other clear plastic bags containing baseball-size amounts of heroin. The CI purchased both crystal meth and cocaine from Ghost and reported that Ghost was Bailey's boyfriend and was living with her

at the apartment.[1] There was no mention of Frye in the application for the search warrant. Search Warrant, ECF No. 224-1 at 27-29.

The search warrant was executed the same day. ECF. No. 224-1 at 33-44. Frye prepared the report of the search, which also was signed by Resident Agent in Charge James J. Panos, III. Frye reported that he, along with members of the Virginia State Police and the HIDTA[2] Roanoke group, executed the search warrant at the home of Bailey and Young in Vinton, Virginia. Young and Bailey were in the house, along with James Christopher Davis and Elisha Blake. Id. at 33. The officers found various quantities of heroin, powder cocaine, crack cocaine, methamphetamine, marijuana, and other unknown types of narcotics. In addition, they found two semiautomatic pistols under the bed in the master bedroom along with the cocaine. The officers also found $28,897 in currency in various locations around the house, digital scales, a food grinder, plastic bags, and other indicia of drug distribution. Rep't of Investigation prepared by Craig Frye, ECF No. 224-1 at 33-34.

Young was read his Miranda[3] rights and stated that the heroin and cocaine located in the bedroom were his. He further stated that he was getting approximately 200 grams of heroin every week to week-and-a-half to distribute. He stated that the firearms in the bedroom were his and that he had received them from someone who owed him money. Young further stated that cocaine located in the bathroom did not belong to him and therefore had to belong to Davis. Id. at 34.

---

[1] Apparently, it is undisputed that Young and Ghost are the same person. PSR, ECF No. 155 at ¶ 11.
[2] This acronym is not explained, but likely refers to a "High Intensity Drug Trafficking Area."
[3] Miranda v. Arizona, 384 U.S. 486 (1966).

Attached to Frye's report was a report by the Virginia State Police, signed by Special Agent Southern, describing the search, the people who were present at the apartment during the search, and the items seized. In addition to Frye, five other law enforcement officers participated in the search. The report noted that the evidence was located and left in place until Detective D. Clark and Agent Southern could photograph and collect the items. Id. at 35-40. A handwritten evidence log also was attached to Frye's report, although it is unclear who prepared it. Id. at 41-44.

Frye swore out the complaint against Young, which was based on the items found during the search. Frye described who was in the apartment when it was searched and the drugs and firearms that were found in the apartment. ECF No. 1. After Young was arrested, counsel was appointed and Young later was indicted by the Grand Jury on the charges described above. ECF Nos. 7, 19.

Young argues that he should be allowed to withdraw his guilty plea to the drug and firearm charges based on Frye's credibility issues. He asserts that he did not look behind the reports that detailed Frye's involvement because he assumed that Frye was a professional law enforcement officer committed to even-handedly enforcing the law. Young does not describe any particular wrongful action taken by Frye in the investigation of his case and asserts only that he would have challenged Frye's credibility.

## II. DISCUSSION

### A. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that

"the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petition alleges a sentencing error that is neither constitutional nor jurisdictional, "a district court lacks authority to review it unless it amounts to a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

**B. Standard of Review**

"The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rule 12 of the Rules Governing Section 2255 Proceedings. The court may dismiss a § 2255 motion without a hearing when the motion, any attached exhibits, and the record of prior proceedings conclusively show that the moving party is not entitled to relief. United States v. Renrick, No. 6:11-CR-00338-JMC-16, 2019 WL 4140934, *2 (D.S.C. Aug. 30, 2019) (citing 28 U.S.C. § 2255(b)).

"When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). The court does not weigh the evidence but reviews the facts in the light most favorable to the petitioner and determines whether there is

7

a genuine issue of fact. Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *3 (E.D.N.C. May 20, 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Permissible inferences must still be within the range of reasonable probability, ... and it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (citing Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)).

## C. Guilty Plea

"[A] guilty plea is a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). Because guilty pleas waive the constitutional right to a trial, they "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Thus, to withdraw a guilty plea as involuntary, a defendant must show "(1) 'some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea' and (2) 'the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.'" United States v. Fisher, 711 F.3d 460, 465 (4th Cir. 2013) (quoting Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006)).

**(1) Impermissible Conduct**

8

Young has not provided any link between Frye's claimed undisclosed misconduct and the drug and firearm charge to which Young pled guilty. Without doing so, he cannot show that he is entitled to relief. See, e.g., Lewis, 2015 WL 2401514 at *8-9 (denying defendant's motion where an officer's falsification of an affidavit in a different case lacked any connection to the defendant's case).

In United States v. Robinson, 627 F.3d 941, 949 (4th Cir. 2010), a defendant was tried and later discovered that officers who testified in his trial had engaged in misconduct in other trials. The defendant argued that he was entitled to a new trial, but the court denied relief, reasoning that "the officers' misconduct, while serious, did not relate to Robinson's case or to the truth-finding function of the criminal proceeding. We thus reiterate our reluctance to order retrials because of subsequently discovered impeachment evidence." See also Runyon v. United States, 228 F.Supp.3d 569, 590-592 (E.D. Va. Jan. 19, 2017), appeal filed No. 17-5 (4th Cir. Aug. 21, 2017) (finding petitioner failed to state a claim for ineffective assistance of counsel when he alleged that his attorney hired an investigator who later was found to have engaged in a bribery scheme because petitioner could only theorize that the investigator may have filed a false report or taken a bribe, but could show no evidence of dishonesty in his own case); and Basham v. United States, 109 F.Supp.3d 753, 863-864 (D.S.C. 2013) (finding that newly discovered evidence that showed that sheriff who testified against defendant was later convicted of corruption and obstruction of justice did not serve as basis for new trial where sheriff was one of eighty-nine witnesses who testified against defendant, his testimony was not critical to the prosecution, and the other evidence against the defendant was overwhelming).

In Young's case, he argues that because Frye gave false answers to Giglio questions prior to his deception being discovered in 2017, he "[s]urely was asked the same Giglio questions before April 2017 and presumably gave the same false answers—something discovery in this case should reveal." ECF No. 220-1 at 11. However, this assertion is mere speculation and insufficient to state a claim for relief under § 2255. See Smith v. United States, No. 5:15-CR-51-BR, No. 5:18-CV-499-BR, 2020 WL 1865852, *1 (E.D.N.C. 2020) (citing Houck v. Substituted Tr. Servs., Inc., 791 F.3d 473, 484 (4th Cir. 2015)) (noting that to survive a motion to dismiss, petitioner must raise a right to relief above the speculative level); and Uzenski v. United States, No. 4:02-CR-26-H, 2008 WL 11422585 (E.D.N.C. 2008) (dismissing § 2255 claim as speculative after noting that "[a]lthough petitioner argues that the evidence may have been tampered with, there is no indication that any tampering actually occurred.")

Young points to no action taken by Frye that could be described as "impermissible conduct" as contemplated by Fisher. In that case, an officer gave false testimony in support of a search warrant. During the ensuing search, officers discovered the evidence that formed the basis of the charge against the defendant. The district court acknowledged that if the defendant had known of the officer's false testimony and had challenged the search, "there likely would have been no prosecution at all." Fisher, 711 F.3d at 467. The court described the officer's conduct as "gross police misconduct [which] goes to the heart of the prosecution's case." Id. at 466.

Nothing similar happened in Young's case. Young does not allege that Frye gave false testimony or made a false report. Frye did not make "unfulfilled or unfulfillable promises" to induce a guilty plea. Fisher, 711 F.3d at 465 (quoting Brady, 397 U.S. at 755). Nor did he make

10

plain and inexcusable misrepresentations not anchored to any permissible litigation strategy. Id. (citing Ferrara, 456 F.3d at 293). Nor did he threaten, promise to discontinue improper harassment, misrepresent the circumstances, or bribe Young to induce his plea. See Brady, 397 U.S. at 755. Young described no action by Frye that could be described as "egregious," "extraordinary," or "highly uncommon" misconduct that goes "to the heart of the prosecution's case." Fisher, 711 F.3d at 466. Accordingly, because Young points to no actions taken by Frye that could be described as inexcusable conduct, he cannot satisfy the first part of the test for showing that his plea was involuntary.

**(2) Materiality**

Even if Young could identify impermissible conduct that satisfied the first prong of Fisher, the court finds that Frye's conduct was not material to Young's decision to plead guilty. To meet the materiality prong, a defendant must show "a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial." Fisher, 711 F.3d at 467 (quoting Ferrara, 456 F.3d at 294). But a defendant may not satisfy this prong merely by stating that his decision would have been different. Rather, courts are to employ an "objective approach to determining reasonable probability." Id.

A defendant's decision to plead guilty is often "heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." Id. at 466. Frye was not involved in the initial investigation that led to the procurement of the search warrant, but did supervise the search, wrote the report of the search, and swore out the complaint against Young. Frye was accompanied by five other officers during the search, and his report is consistent with the

11

report from the Virginia State Police. Thus, if Young had known about Frye's misconduct in other cases and believed he could challenge Frye's testimony at trial, he still faced the testimony of five other law enforcement officers.

Young faced a minimum guidelines sentence of 228 months and a maximum term of life had he gone to trial and been convicted on all counts. PSR, ECF No. 155 at ¶¶ 83-85. Had the government filed an enhancement under 21 U.S.C. § 851, he would have faced a mandatory minimum sentence of 300 months. Id. at ¶ 85. Entering into the plea agreement resulted in a sentence of 151 months. Given the other evidence against him and the possibility of a significantly lengthier sentence had he gone to trial, the court does not find that it is objectively reasonable to conclude that had Young known of Frye's misconduct he would have chosen to go to trial rather than plead guilty.

## D. Evidentiary Hearing

Finally, although Young did not request an evidentiary hearing, the court has examined the record and concluded that Young has not alleged facts to indicate the necessity of an evidentiary hearing. See 28 U.S.C. § 2255(b) (providing that a court need not grant a hearing on a § 2255 motion if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); see also Jones v. Polk, 401 F.3d 257, 269 (4th Cir. 2005) (quoting Fullwood v. Lee, 290 F.3d 663, 681 & n. 7 (4th Cir. 2002)) ("[A] federal habeas court 'is permitted to hold [an evidentiary] hearing only if the petitioner alleges additional facts that, if true, would entitle him to relief.' . . . Thus, an evidentiary hearing is an instrument to test the truth of facts already alleged in the habeas petition.")

## III. CONCLUSION

Finding that the allegations in Young's complaint, taken in the light most favorable to him, do not warrant withdrawal of his guilty plea, the court **GRANTS** the government's motion to dismiss, ECF No. 224, and **DISMISSES** Young's § 2255 petition, ECF No. 220. Because Young has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate order will be entered.

Entered: June 30, 2020

Michael F. Urbanski
Chief United States District Judge